[Civ. No. 4690. First Appellate District, Division Two.—May 27, 1924.]

INTERNATIONAL MAGAZINE COMPANY (a Corporation), Appellant, v. NATIONAL RADIO COMPANY (a Corporation), Respondent.

[1] CORPORATIONS—CONTRACT FOR ADVERTISEMENT IN MAGAZINE—ACTUAL AUTHORITY OF PRESIDENT—BY-LAWS—EVIDENCE.—Under a section of the by-laws of a corporation giving to the president thereof "the general powers usually vested in the office of president," the latter had no actual authority to make a contract in the name of the corporation by himself as president for an advertisement in a magazine involving a considerable expenditure of money and extending over a period of a year, which contract was not under the seal of the corporation, where such corporation was merely experimenting with the product, to which the advertisement referred, and had not yet manufactured articles for sale, the important matter of starting out on an expensive advertising campaign to extend over the period of a year being a problem for the consideration of the board of directors, the managing body of the corporation, and where each time it was necessary to sign any contract or instrument binding the corporation, a resolution was specially passed conferring that authority.

[2] ID.—ACTION TO RECOVER UPON CONTRACT—ABSENCE OF ACTUAL AUTHORITY OF PRESIDENT—RATIFICATION—EVIDENCE.—In an action against a corporation to recover upon a contract made by its president without actual authority therefor for an advertisement in a magazine, a ratification by the corporation of such contract was not proven by plaintiff by a showing that it had mailed copies of its magazines, containing the advertisement, to defendant from time to time, and that statements of account were mailed from time to time to defendant and that some statements of similar import upon the stationery of plaintiff were afterward seen in the files of the defendant company, where said copies of plaintiff's magazines had not been mailed to the proper address of the defendant and there was no showing made that any of them had ever been received by the defendant or seen by any of its officers, and there was no proof that the statements referred to were brought to the attention of any officers of the defendant

1. Authority of president of corporation to contract for services of other persons, note, L. R. A. 1918F, 33. See, also, 6 Cal. Jur. 1102.

2. See 6 Cal. Jur. 1119; 7 R. C. L. 662.

and no showing made that the corporate officers had any knowledge of the existence of the contract relied upon.

[3] ID.—RATIFICATION—KNOWLEDGE.—A ratification must be made with full knowledge of the facts.

[4] ID.—OSTENSIBLE AGENCY—EVIDENCE—RELIANCE—KNOWLEDGE.—In such action, there was no substantial evidence upon which to predicate ostensible authority of the president of the defendant corporation; for while the record contained the statement of the president that he had "O. K.'d bills and various kinds of papers . . . whatever came up in the regular routine of business of the corporation," there was no proof that the plaintiff relied upon this exercise of authority or that it even knew thereof, this being an essential element of liability based upon the ostensible authority of an agent.

[5] ID.—EVIDENCE—PRIMA FACIE CASE.—In such action, if plaintiff had simply proved the making of the contract in question on behalf of the defendant by its president a *prima facie* case of liability on the part of defendant would have been made out; but plaintiff's proof having included affirmative evidence that there was no provision in the by-laws of the defendant corporation giving the president power to make contracts and that there had been no special authorization by the board of directors, which facts were brought out by the plaintiff's witnesses, plaintiff's case must fall of its own weight.

---

(1) 14a **C. J.**, p. 357, sec. 2217, p. 358, sec. 2217, p. 422, sec. 2272. (2) 14a **C. J.**, p. 386, sec. 2239. (3) 14a **C. J.**, p. 374, sec. 2233. (4) 14a **C. J.**, p. 371, sec. 2229, p. 372, sec. 2229. (5) 14a **C. J.**, p. 358, sec. 2217.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Warren V. Tryon, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

Ernest K. Little for Appellant.

Joseph A. Garry, Joseph M. Trusty and Frank J. Golden for Respondent.

LANGDON, P. J.—This is an appeal by the plaintiff from a judgment against it, entered after defendant's motion, for

---

3. See 6 Cal. Jur. 1120; 7 R. C. L. 664.

4. Authority of officer to represent corporation as inferred from manner in which he has been permitted to act, note, Ann. Cas. 1913D, 646. See, also, 6 Cal. Jur. 1099; 7 R. C. L. 623.

a nonsuit had been granted, in an action brought to recover one thousand dollars alleged to be due from the defendant as the price of five one-page advertisements in a magazine known as "Motor Boating," a publication owned by plaintiff.

The record discloses that on or about July 17, 1920, Joseph B. Ruegg was the president of the defendant corporation, and on that day signed a writing in the name of the corporation, by himself as president thereof, agreeing to pay a specified sum for each insertion of a one-page advertisement in said magazine for a period of one year. The writing was not signed by either the secretary or manager, nor was it under the seal of the corporation. It also appeared in evidence, affirmatively, that there was no resolution of the board of directors of the corporation authorizing its president to sign this contract, nor was there any resolution ever passed by said board referring in any way to the said contract or the advertising to be done thereunder. The by-laws were introduced in evidence and the only portion thereof having any bearing upon our problem is the following: "The president . . . shall have the general powers and duties usually vested in the office of the president of a corporation."

It also appeared that the corporation had a general manager at the time the contract was signed by its president; that the advertisement which was published in the magazine in conformity with said contract referred to a manufactured product which the defendant corporation was incorporated for the purpose of producing, but that at the time the contract was signed the corporation was merely experimenting with said product and no sales had been made of the same and the article was not being produced for sale; that the contract provided for advertising for a period of a year at an expense of two hundred dollars per month.

[1] We think it is apparent that the president of this corporation had no actual authority to make the contract. The section of the by-laws above quoted giving to him "the general powers usually vested in the office of president" is ineffectual to confer authority to make a contract for the corporation such as here involved, for such power is not usually vested in the president. It was said in the case of *Black* v. *Harrison Home Co.*, 155 Cal. 121 [99 Pac. 494]: "It is an elementary principle of corporation law that the president of a corporation has no power merely because he is presi-

dent to bind the corporation by contract. The management of the affairs of a corporation is ordinarily in the hands of its board of directors, and the president has only such power as has been given him by the by-laws and by the board of directors, and such other power as may arise from his having assumed and exercised the power in the past with the apparent consent and acquiescence of the corporation. The general rule in this regard is stated in 2 Cook on Corporations, section 716, as follows: 'The president of a corporation has no power to buy, sell or contract for the corporation, nor to control its property, funds or management. This is a rule which prevails everywhere, excepting possibly in the State of Illinois. . . . It is true that the board of directors may expressly authorize the president to contract; or his authority to contract may arise from his having assumed and exercised that power in the past; or the corporation may ratify his contract or accept the benefits of it, and thereby be bound. But the general rule is that the president cannot act or contract for the corporation any more than any other director.' (See *Alta Silver Min. Co.* v. *Alta Placer Min. Co.,* 78 Cal. 629, 632 [21 Pac. 373]; *Bliss* v. *Kaweah etc. Co.,* 65 Cal. 502 [4 Pac. 507]; *Salfield* v. *Sutter etc. Co.,* 94 Cal. 546 [29 Pac. 1105]; *Blood* v. *La Serena etc. Co.,* 113 Cal. 221 [41 Pac. 1017, 45 Pac. 252]; *Barney* v. *Pfoor,* 117 Cal. 56 [48 Pac. 987]; *Northwestern etc. Co.* v. *Whitney,* 5 Cal. App. 105, 108 [89 Pac. 981].)''

The same rule is announced in California Jurisprudence, volume 6, section 474, page 1102: ''Powers of President. Although the president of a corporation is the presiding officer of the board of directors, he has merely by reason of holding such office and regardless of conferred or ostensible authority, no more power of management or disposal over the property and affairs of the corporation than any other single member of the board. He has no power, merely because he is president, to bind the corporation by contract, but rather, only such power as has been given him by the by-laws and by the board of directors, and such other powers as may arise from his having assumed and exercised authority in the past with the apparent consent and acquiescence of the corporation, or which are in the ordinary course and conduct of its business.''

In the instant case, the contract involved a considerable expenditure of money and extended over a period of a year. Under the special facts and circumstances of this case, where the corporation was merely experimenting with the product to be manufactured and had not yet manufactured such articles for sale, the important matter of starting out on an expensive advertising campaign to extend over the period of a year, was, assuredly, a problem to be considered by the board of directors, the managing body of the corporation, and would not be within the general duties of the president of the corporation.

Added to this, we have in the record the testimony of the secretary of the corporation, the plaintiff's witness, as follows: "Q. You say you are the secretary. What power has Mr. Ruegg as President of the National Radio Company? What are his various duties by resolution? A. There are not any resolutions giving him any general powers, but each time it was necessary to sign any contract or instrument binding the corporation, there was a resolution specially passed conferring that authority and power, such as signing notes and borrowing money for the corporation."

The case of *Grummet* v. *Fresno Glazed Cement Pipe Co.*, 181 Cal. 514 [185 Pac. 388] is relied upon by appellant to maintain its contention that its proof in the instant case made out a *prima facie* case. But the Grummet case presented a situation where an employee was suing for wages alleged to be due him. It appeared that the plaintiff had been engaged as assistant manager of the corporation by the president and manager of the same; that he performed services for the corporation and his employment continued for nearly two years; that his name appeared as assistant manager in the advertising of the defendant corporation, and that the books of the corporation showed that he was to receive a fixed compensation for his services, $710 of which had been paid to him and the balance of $2,340 had been credited to his account upon the books of the corporation. We think the facts of the two cases are not comparable.

[2] Upon the question of ratification, plaintiff showed that it had mailed copies of its magazines, containing the advertisement, to defendant from time to time. It appeared, however, that they had not been mailed to the proper address of the defendant and there was no showing made

that any of them had ever been received by the defendant nor seen by any of its officers. There is also testimony that statements of account were mailed from time to time to the defendant and that some statements of similar import upon the stationery of plaintiff were afterwards seen in the files of the defendant company. There is no proof, however, that these statements were brought to the attention of any officers of the company and no showing that the corporate officers had any knowledge of the existence of the contract relied upon. [3] A ratification must be made with full knowledge of the facts. (*Schmidt* v. *Mesmer*, 116 Cal. 267, 271 [48 Pac. 54] ; 6 Cal. Jur., sec. 57, pp. 93, 94.)

[4] There was no substantial evidence upon which to predicate ostensible authority of the president; for while the record contained the statement of the president that he had "O.K.'d bills and various kinds of papers . . . whatever came up in the regular routine of business of the corporation," there is no proof that the plaintiff relied upon this exercise of authority or that it even knew thereof. And this is an essential element of liability based upon the ostensible authority of an agent. (1 Cal. Jur., p. 737 et seq., secs. 38, 39 and 40.)

[5] It is important to point out that the present case does not present a situation where the plaintiff simply proved the making of a contract on behalf of the defendant by its president, and thereafter the motion for nonsuit was made. Had such a situation existed the plaintiff would have made out a *prima facie* case under the rule of *Grummet* v. *Glazed Cement Pipe Co., supra,* and it would have devolved upon the defendant to take up the question of the absence of special authorization as a defense—that matter not entering into a *prima facie* showing. But in the instant case the plaintiff went further than a showing that the contract was made by the president of the corporation on its behalf. The plaintiff's proof included affirmative evidence that there was no provision in the by-laws giving the president power to make contracts and that there had been no special authorization by the board of directors. These facts were brought out by the plaintiff's witnesses. It would seem, therefore, that the plaintiff's case must fall of its own weight.

The judgment is affirmed.

Sturtevant, J., and Nourse, J., concurred.